*84 Per Curiam.
At issue here is whether a proposed change of school to one that is 60 miles from the child’s present school would modify the established custodial environment of that child and whether, absent a change in the established custodial environment, the trial court must, when considering an important decision affecting the welfare of the child, analyze each of the ‘best-interest’ factors articulated in MCL 722.23, even if a factor is not relevant to the immediate issue before the court. Under the facts of this case, we answer each of these questions in the negative and therefore affirm.
Plaintiff-father and defendant-mother have two children from their marriage. The divorce judgment entered in 2000 granted the parties joint legal custody and established the children’s primary residence with defendant. Both parties and their children lived in Grosse Pointe Woods until 2007, when defendant relocated to Howell, which is approximately 60 miles away. When defendant tried to enroll the children in Howell public schools, plaintiff objected. At the conclusion of a six-day evidentiary hearing, the trial court ruled that the established custodial environment was with both parents and that defendant’s proposed change of schools would modify the children’s established custodial environment because plaintiffs parenting time would be adversely affected by the 60-mile distance between the proposed schools and plaintiffs home. Additionally, the trial court held that defendant had not satisfied her burden of proof under the ‘clear and convincing evidence’ standard to show that the change was in the best interests of the children. The Court of Appeals vacated the trial court’s order, holding that the trial court erred by concluding that the established custodial environment would be modified. Pierron v Pierron, 282 Mich App 222, 250-251; 765 NW2d 345 (2009). Moreover, the Court remanded the case for the trial court to reevalu *85 ate the change-of-school issue and determine whether defendant had demonstrated by a ‘preponderance of the evidence’ that the change was in the children’s best interests. Id. at 264.
Under the Child Custody Act, MCL 722.21 et seq., “all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.” MCL 722.28. Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination “ ‘clearly preponderate^] in the opposite direction.’ ” Fletcher v Fletcher, 447 Mich 871, 879; 526 NW2d 889 (1994), quoting Murchie v Std Oil Co, 355 Mich 550, 558; 94 NW2d 799 (1959).
The Child Custody Act “applies to all circuit court child custody disputes and actions, whether original or incidental to other actions.” MCL 722.26(1). The act provides that when parents share joint legal custody — as the parties do here — “the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.” MCL 722.26a(7)(b). However, when the parents cannot agree on an important decision, such as a change of the child’s school, the court is responsible for resolving the issue in the best interests of the child. Lombardo v Lombardo, 202 Mich App 151, 159; 507 NW2d 788 (1993); see also MCL 722.25(1).[1] When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment. The established custodial environment is the environment in which *86 “over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.” MCL 722.27(l)(c). While an important decision affecting the welfare of the child may well require adjustments in the parenting time schedules, this does not necessarily mean that the established custodial environment will have been modified. Brown v Loveman, 260 Mich App 576, 595-596; 680 NW2d 432 (2004).[2] If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed. See id. The court may not “ ‘change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.’ ” Id. at 585, quoting MCL 722.27(l)(c).
Here, the trial court found that the proposed change of schools would modify the established custodial environment because the 60-mile distance between the proposed schools and plaintiffs home “would. . . impinge on the father’s ability to provide educational guidance, discipline, and the necessities of life.” The Court of Appeals, however, concluded that the trial court’s ruling that the proposed change of schools would alter the established custodial environment was *87 against the great weight of the evidence because the distance of the new schools from plaintiffs home would only require relatively minor adjustments to plaintiffs parenting time. We agree with the Court of Appeals.
Although the testimony here established that plaintiff is conscientiously involved with his children’s education, there is no reason to believe from either the testimony or the trial court’s findings of fact that the change of schools will significantly modify the established custodial environment the children share with plaintiff. A review of the record indicates that the children visit plaintiffs home approximately three weekends out of every four, from Saturday afternoon until Sunday evening. Before the instant action was filed with the trial court, the children did not visit overnight on weeknights during the school year.[3] The record also indicates that plaintiff occasionally picks the children up from tutoring and takes them out to dinner during the week. And, one week out of every seven, plaintiff takes the children out to lunch.
*88 Given this record, plaintiffs weekend parenting time will be unaffected. With regard to weekdays, plaintiff is involved with the children during the daytime for only one week out of every seven because this is all that his work schedule allows. Although the 60-mile distance is acknowledgedly more inconvenient for plaintiff, it is not so far that plaintiff cannot continue his occasional midweek activities with his children and his involvement in their education.[4] Moreover, the record reflects *89 that the children spend the vast majority of their time in the established custodial environment of their mother, the defendant. In fact, plaintiffs own testimony acknowledged that the children “spend most of their time” with “their mother.” From the children’s perspective, the changes in the established custodial environment they share with plaintiff should be minor, if at all.[5] This being the case, defendant’s 60-mile move to Howell does not legally effect a change in the established custodial environment the children share with either plaintiff or defendant. Therefore, we agree with the Court of Appeals that the trial court’s determination that the proposed change of schools would alter the established custodial environment was against the great weight of the evidence.
Because there is no change in the established custodial environment, the heightened evidentiary burden is not applicable, and defendant is required to prove by a preponderance of the evidence that the proposed *90 change of schools would be in the best interests of the children, using the best-interest factors identified in MCL 722.23. However, the best-interest factors are geared toward general custody determinations, and many of these factors are simply irrelevant to particular “important decisions” affecting the welfare of a child. For instance, factor f, pertaining to the “moral fitness of the parties involved,” MCL 722.23(f), while highly relevant in making a custody determination between parents, has no discernible bearing on determining whether a proposed change of school is in a child’s best interests.
The trial court itself expressed frustration with the best-interest factors because many of these factors had nothing to do with the issue at hand. Despite this, the trial court felt obligated to consider factors that were wholly unrelated to the change-of-school issue. For example, the court determined that factor c, pertaining to the “capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs,” MCL 722.23(c), favored plaintiff, focusing on the parties’ disparity of income. The trial court observed that defendant had failed to make any effort to obtain full-time employment even though she claimed that job prospects were better in Howell. While disparity of income between the parties and defendant’s asserted failure to secure full-time employment might be significant if the issue before the court involved a change of custody, these considerations have little or nothing to do with the change-of-school issue. The Court of Appeals addressed the scope of the best-interest factors in this context by concluding that “the court must narrowly focus its consideration of each best-interest factor on the specific ‘important decision[] *91 affecting the welfare of the child’ that is at issue.” Pierron, 282 Mich App at 252-253. We agree with this conclusion.
If a proposed important decision affecting the welfare of the child will not modify the established custodial environment, evaluating best-interest factors that are irrelevant to the particular issue before the court distracts from the proper focus of the proceeding and poses the risk that one parent’s preference will prevail even though that preference is not in the best interests of the child.
Nevertheless, MCL 722.23 requires “the sum total of the... factors to be considered, evaluated, and determined by the court[.]” (Emphasis added.) In Parent v Parent, 282 Mich App 152; 762 NW2d 553 (2009), the Court of Appeals addressed this issue, also in the context of a dispute over a proposed change of school. Recognizing that even though each of the factors might not be relevant to the issue, MCL 722.23 requires consideration of “all” the factors, the Court held that “[t]he trial court must at least make explicit factual findings with regard to the applicability of each factor.” Id. at 157 (emphasis added). We believe that this approach complies with MCL 722.23 and allows for the proper evaluation of whether an important decision is genuinely in the best interests of the children, in accordance with the Child Custody Act. Therefore, we hold that when a trial court is considering a decision that will not modify the established custodial environment, such as the change-of-school issue in this case, it must consider the applicability of all the factors. However, if the trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record.
*92 We also agree with the Court of Appeals that the trial court clearly erred on a major legal issue regarding factor i, “[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference,” MCL 722.23(i). Although both children expressed a preference to attend Howell schools, it appears that the trial court refused to consider their preferences because neither child had ever attended a Howell school and, therefore, presumably lacked any factual basis on which to form a reasonable preference. Essentially, the trial court imposed a requirement of actual, firsthand experience, in this case with a Howell school, in order for the child’s preferences to be valid. However, we agree with the Court of Appeals that factor i does not “require that a child’s preference be accompanied by detailed thought or critical analysis” and that the “reasonable preference” standard merely “exclude[s] those preferences that are arbitrary or inherently indefensible.” Pierron, 282 Mich App at 259. The trial court did not indicate that the children’s stated preferences violated this minimal standard of reasonableness.
To summarize, when considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child’s standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child’s best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is *93 essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child’s best interests. In addition, under those circumstances, although the trial court must determine whether each of the best-interest factors applies, if a factor does not apply, the trial court need not address it any further. In other words, if a particular best-interest factor is irrelevant to the question at hand, i.e., whether the proposed change is in the best interests of the child, the trial court need not say anything other than that the factor is irrelevant.
In this case, because we agree with the Court of Appeals that the proposed change of schools will not modify the established custodial environment,[6] we affirm the Court of Appeals’ decision to vacate the trial court’s order. However, even by a ‘preponderance of the evidence’ standard, this case presents a very close question with regard to whether attending Howell Schools is in the best interests of the children. It is clear that plaintiff is concerned about his children, is involved in their education, and provides guidance, structure, and discipline even when the children are not in his care. While the change of schools would not modify the established custodial environment, we recognize that the change of schools may, in fact, impair plaintiffs ability to be readily accessible to provide guidance and structure. These facts, of course, are relevant to assessing where the interests of these children lie, and, on *94 remand, we encourage the trial court to carefully consider all relevant factors when making this assessment. We remand to the trial court for further proceedings not inconsistent with this opinion.[7]
Kelly, C.J., and Cavanagh, Weaver, Young, Markman, and HATHAWAY, JJ., concurred.

 MCL 722.25(1) provides, “If a child custody dispute is between the parents,... the best interests of the child control.”

 Brown involved a change in residence of more than 100 miles, and a custodial environment in which “each parent had fifty percent parenting time.” Brown, 260 Mich App at 595-596. The dissent asserts that Brown stands for “the proposition that if a proposed move would relegate an ‘equally active’ parent to the more circumscribed role of ‘weekend’ parent, the parenting time modification would amount to a change in the established custodial environment.” Whatever the merits of that proposition, there is no evidence in the instant case that the allocation of parenting time between plaintiff and defendant was “nearly equal.”

 After the instant action was filed, the trial court entered an order regarding school district and parenting time, which required the children to attend Grosse Pointe schools. There is some testimony indicating that the children occasionally stayed overnight with plaintiff on some school nights after this order was entered, but only presumably to reduce the amount of time that the children spent traveling between Howell and Grosse Pointe Woods. The dissent observes that the trial court found that “overnight visits on weeknights and first option parenting time for plaintiff would no longer be practical” if the children were enrolled in Howell schools. In context, the trial court was clearly referring to the parenting time provision in the judgment of divorce as part of its analysis of whether the established custodial environment would be modified. However, plaintiff, in fact, had not been engaged in weeknight, overnight parenting time. The parenting time provision, by itself, does not establish the actual custodial environment, Baker v Baker, 411 Mich 567, 579-580; 309 NW2d 532 (1981), and it was error for the trial court to consider the provision allowing weeknight, overnight visits without also considering that these visits were not occurring.

 The dissent seems to rely largely on the 60-mile distance itself, rather than on the actual impact that this distance has on the established custodial environment. For instance, the dissent provides severed examples of how plaintiffs midweek involvement with his children, much of which pertains to one-time events, may be hindered. However, even with respect to these events, plaintiff was able to attend his son’s graduation ceremony that was scheduled during plaintiffs regular workday because the school was near plaintiffs office; when Andrew truanted from school, both plaintiff and defendant dealt with the issue immediately; and when defendant attempted to register the children in the Howell schools, she listed plaintiff as the fourth person to contact in case of emergency, after herself, her sister, who lives closer, and another individual. There is nothing in the record to indicate that plaintiff will be unable to attend graduation ceremonies or other significant events, or to respond to discipline issues or emergencies, if the children attend Howell schools. More pertinently, however, none of these events alters to whom the children naturally look for “guidance, discipline, the necessities of life, and parental comfort.” MCL 722.27(l)(c). The dissent observes that plaintiff assisted his children with their weeknight homework assignments. According to the record, this occurred “sometimes” on the same evening that he took his children out to dinner. The dissent also observes that plaintiff conducted weekly science tutoring sessions for his son and worked on science projects in the basement. These sessions took place during a single school year, and it is unclear whether they occurred on a school night or during the weekend. Therefore, it is also unclear whether such sessions would be affected by the proposed change of school. Regardless, we do not take issue with the fact that plaintiff has been a good parent. Although the dissent feels the need to contrast defendant unfavorably with plaintiff, we merely believe that the additional 60-mile distance is not so far away that plaintiff cannot continue occasionally to take his children out to dinner and help them with their homework as he had sometimes done in the past.

 In asserting that the established custodial environment would be modified if the children were to attend Howell schools, the dissent cites matters that are simply irrelevant in this case. For example, it asserts that the trial court’s finding that the proposed change of schools would modify the established custodial environment is supported by the fact that plaintiff suffers from multiple sclerosis, which limits his prospects of finding employment closer to Howell and which required plaintiff to use a wheelchair during a recent vacation with the children. While we share the dissent’s understandable solicitude for plaintiff and his handicap, there is no evidence to indicate that this handicap affects his custodial relationship with his children, and it has no bearing on the established custodial environment either as it is currently or as it would be if the children were to attend Howell schools. Finally, the dissent claims that defendant’s asserted “irresponsibility” as a parent “bolsters” the trial court’s finding that the proposed change of schools would modify the established custodial environment. While, if true, this may well constitute a relevant consideration in assessing whether the proposed change of schools would be in the children’s best interests, it is considerably less relevant in assessing whether the proposed change would modify the custodial environment.

 We emphasize that we do not hold here that a proposed change of school will never modify an established custodial environment. Rather, we merely hold that, under the specific facts of this case, this particular change of schools does not modify the established custodial environment.

 We have considered defendant’s post-argument motion to “correct the record, strike the response oral argument [sic] and the response brief [sic] of the plaintiff-appellant; to investigation [sic] into deception systematically perpretrated [sic] by the plaintiff-appellant; and for costs and sanctions against the plaintiff-appellant,” and it is denied. However, defendant’s motion contains over 25 specific allegations that plaintiffs counsel has “lied,” “intentionally misled,” “deceived,” or been “manipulative” concerning the facts of this case. Additionally, defendant makes aspersions concerning the integrity of the attorney grievance process, and she has “noticed that the video tape of the oral argument in the State Bar’s web cite [sic] was cleaned up a bit and can not be relied upon for the full record.” We find all these allegations to be irresponsible and unsubstantiated. Therefore, costs of $250 are assessed against defendant’s counsel in favor of plaintiff under MCR 7.316(D)(1)(b) for filing this vexatious motion.