*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL PATRICK RYAN,

        Plaintiff-Appellee,

v

MICHAELA SOPHIA SPIESSL,

        Defendant-Appellant.

UNPUBLISHED
November 10, 2022

No. 360000
Marquette Circuit Court
LC No. 19-057956-DM

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this custody dispute, defendant appeals as of right the trial court's orders denying her motion to change the domicile of the parties' minor children, and denying the parties' cross-motions for change of the children's custody. We vacate the trial court's finding of contempt against defendant, but affirm in all other respects.

## I. BACKGROUND

The parties are the parents of two minor children, KPR and JCR. Pursuant to a judgment of divorce entered on February 6, 2020, the parties were awarded joint physical and legal custody of the children. They shared physical custody of the children under an alternating schedule of four days on and four days off. At the time the judgment was entered, the parties lived in Negaunee Township, Michigan. The judgment prohibited the parties from moving the children's domicile in Negaunee Township more than 100 miles away without the consent of the other party or an order of the court.

Following the parties' divorce, defendant found a job with the Michigan Department of Corrections in Kincheloe, Michigan, which is more than 100 miles from Negaunee Township. Defendant did not initially inform plaintiff of the move, but the children stayed with defendant in Kincheloe during her parenting time. When plaintiff became aware that defendant resided in Kincheloe, he filed a motion to modify the children's custody by awarding him primary physical custody of the children. Defendant filed a cross-motion for modification of custody, and a separate motion to change the children's domicile. Following an evidentiary hearing and a de novo review hearing, the trial court denied defendant's motion for a change of domicile, and denied the parties'

cross-motions to modify custody. The trial court also found defendant in contempt "for failing to take steps in a timely manner to seek a change in the children's legal residence." Defendant now appeals.

## II. STANDARDS OF REVIEW

"This Court reviews for an abuse of discretion a trial court's ultimate decision whether to grant a motion for change of domicile." *Moote v Moote*, 329 Mich App 474, 477; 942 NW2d 660 (2019) (quotation marks and citation omitted). In child custody cases, the trial court abuses its discretion when its decision is "palpably and grossly violative of fact and logic . . . ." *Id*. at 477-478 (quotation marks and citations omitted).

MCL 722.28 provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Thus, a trial court's findings, including the trial court's findings in applying the MCL 722.31 factors, should be affirmed unless the evidence clearly preponderates in the opposite direction. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "In reviewing a trial court's findings, this Court should defer to the trial court's determination of credibility." *Moote*, 329 Mich App at 478 (citation omitted). "Further, this Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Id*. (quotation marks and citation omitted).

This Court generally reviews constitutional issues de novo. *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 591; 965 NW2d 658 (2020). "This Court reviews a trial court's decision regarding a contempt motion for an abuse of discretion." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). "If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009).

## III. ANALYSIS

Defendant argues that the trial court abused its discretion by denying her motions for a change of the children's domicile and to modify their physical custody. Defendant principally argues that the trial court did not adhere to the appropriate evidentiary standard, that it erred by finding that the children had an established custodial environment with both parties, and that its findings regarding several of the statutory best-interest factors were against the great weight of the evidence. Defendant also argues that inconsistent rulings by the trial court and its decision to review plaintiff's mental health records *in camera* undermined her right to procedural due process, and that the court erred by finding her in contempt. Although we agree that the finding of contempt should be set aside, we disagree with each of defendant's other claims of error.

## A. CHANGE OF DOMICILE AND MODIFICATION OF CUSTODY

MCL 722.31 governs a child's change of domicile and provides in pertinent part:

(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

\* \* \*

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

This Court has distilled a court's analysis when considering a change of domicile into the following factors:

First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the

change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Moote*, 329 Mich App at 480, quoting *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013) (citation omitted).]

When considering these factors, the court's primary focus must be on the child. *Moote*, 329 Mich App at 480. Defendant's primary challenge to the trial court's decision denying her motion to change the children's domicile is that the court erred (1) by finding that the children had an established custodial environment with both parties, and (2) by failing to properly apply the appropriate evidentiary standard when evaluating the children's best interests.

Regarding modification of a child's physical custody, MCL 722.27(1) provides in pertinent part:

If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

\* \* \*

(c) Subject to subsection (3), modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. If a motion for change of custody is filed while a parent is active duty, the court shall not consider a parent's absence due to that active duty status in a best interest of the child determination.

See also *Pierron*, 486 Mich at 85-86 (stating that an established custodial environment is the environment in which the child, over an appreciable time, naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort) (quotation marks and citation omitted). Accordingly, defendant's challenges to the trial court's decisions on her motions for a change of domicile and for modification of physical custody dovetail because they both address whether the trial court erred by finding that an established custodial environment existed with both parties, and whether the court properly weighed the best-interest factors of MCL 722.23 in the context of the correct evidentiary standard.

First, defendant does not dispute that the children had an established custodial environment with her, but she argues that the trial court erred by finding that the children also had an established custodial environment with plaintiff. We conclude that the record amply supports the trial court's finding.

The parties shared joint physical custody of the children under an alternating schedule of four days on and four days off. Thus, the parties had physical custody of the children for relatively equal amounts of time. Respecting plaintiff in particular, Luke Siebert, a witness who knew plaintiff, described plaintiff as a "great father," and explained that when the children are with plaintiff, the trio are together "doing boy things." Siebert described how plaintiff and the boys would climb tree houses, sit around campfires, and make smores. Similarly, plaintiff's mother, Jeanne Ryan, testified that both she and her husband have a close relationship with the children. She described plaintiff as a "loving, supportive father" who taught the children to write their names and encouraged their participation in church. She observed plaintiff snuggling with the children, watching a children's video with them, helping them with chores, and "just having free time to play." Ryan described both boys as "[v]ery affectionate" with plaintiff, and said they would run to plaintiff, jump on him to hug and kiss him, and wrestle and hang out together. Another witness, Andrew Bek, knew plaintiff from his involvement in the ski patrol and other community organizations, and he described plaintiff as "a responsible dad," who is "[a]ffectionate" and gives parental guidance and discipline to his children as appropriate.

Plaintiff described his bond with the children as follows:

> You know, it's almost unshakeable the way that they react to seeing me upon picking them up and first thing in the morning and the way we go about it. It's a magical thing. I really enjoy being their dad.

Considering both the parties' alternating physical-custody schedules and the body of evidence describing plaintiff's parenting of and interaction with the children, the trial court's finding that an established custodial environment existed with both plaintiff and defendant is not against the great weight of the evidence.

Next, defendant's argument that the trial court utilized an improper burden of proof in considering her motions for a change of domicile and modification of physical custody lacks merit. Respecting the motion to change domicile, after determining that the children had an established custodial environment with both parties, the trial court next properly considered whether a change of domicile would modify or alter that established custodial environment, *Moote*, 329 Mich App at 480, and it concluded that it would. Considering the distance between plaintiff's residence and defendant's new residence, and the trial court's observation that it would be unrealistic for the children to continue to have residences with both parents, the trial court's finding that a change of domicile would disrupt the children's established custodial environment with plaintiff is not against the great weight of the evidence. As such, the trial court properly determined that it was necessary for defendant to establish that a change in domicile was in the children's best interests "by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence." *Moote*, 329 Mich App at 480. Likewise, the trial court also properly determined that it could not modify the children's existing physical-custody arrangement unless

clear and convincing evidence established that a modification served the children's best interests. MCL 722.27(1)(c).

## B. BEST-INTEREST FACTORS

Next, defendant challenges the trial court's findings regarding several of the statutory best-interest factors. MCL 722.23 sets forth the best-interest factors as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant argues that the trial court erroneously found that Factor (b) (the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any) equally favored both parties. Defendant asserts that the trial court should have found that this factor favored her because the evidence demonstrated that she was the parent who made sure that the children had a religious upbringing. While defendant presented evidence that she took the children to church and Bible school at Maplewood Baptist Church in Kincheloe, the evidence also showed that both parties were bonded to the children, gave them love and affection, and both actively participated in their education. Moreover, Ryan testified that she had observed plaintiff and the children "willingly participate in church." The trial court's decision to weigh this factor equally in favor of both parties is not against the great weight of the evidence.

Defendant also generally challenges the trial court's findings regarding Factors (a), (d), (e), and (f). The trial court found that the parties were equal respecting Factors (a) and (f), that Factor (d) favored plaintiff, and that Factor (e) did not apply. Defendant argues that the trial court's findings regarding these factors are against the great weight of the evidence because testimony from defendant, her mother, and her boyfriend confirmed that the children were victims of physical abuse by plaintiff. In support of this argument, defendant also relies on photographs depicting bruises on the children after they returned from parenting time with plaintiff. However, the trial court reviewed the photographs and concluded that they reflected injuries that were consistent with typical childhood scratches, abrasions, and bruises, rather than abuse or trauma. Additionally, an investigator with Child Protective Services (CPS) testified that he investigated the allegations of child abuse and found them to be unfounded. Having reviewed the photographs and considered the testimony on this issue, including the CPS investigator's findings, and plaintiff's explanations for the children's bruises and abrasions, we are not persuaded that the trial court erred in finding that the children were not physically abused by plaintiff. The trial court's determinations regarding Factors (a), (d), (e), and (f) are not against the great weight of the evidence.

As for Factor (h) (the home, school, and community record of the child), defendant is simply incorrect that the trial court held that the parties did not provide testimony regarding this factor. The court noted that there were positive influences for the children in Kincheloe and Kinross, such as their school program and participation in the religious community, but that the stability they had acquired living with plaintiff in Negaunee Township outweighed those benefits. Further, while defendant faults the trial court for not making findings regarding plaintiff's mental health diagnosis and medications, and whether his mental health issues and medications would interfere with his parenting of the children, defendant overlooks that the trial court conducted an *in camera* review of plaintiff's medical records and found that plaintiff was appropriately addressing his mental health issues and that the issues were not interfering with his ability to parent the children in an effective manner. Accordingly, defendant's challenges to the trial court's best-interest findings lack merit.

## C. INCONSISTENT RULINGS OF THE TRIAL COURT

Defendant also asserts that the trial court made "inconsistent rulings" regarding the children's schooling which amount to "procedural irregularities that violated the procedural due process rights of [defendant] and . . . resulted in a decision which is not in the best interest of the minor children." We disagree.

In *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, 359269, & 359285); slip op at 24, this Court explained the substantive and procedural prongs of the right to due process protected by our state and federal constitutions:

> Both the United States Constitution and the Michigan Constitution prohibit the government from depriving persons of life, liberty, or property without due process of law. See US Const, Am XIV; Const 1963, art 1, § 17. The protections afforded by these clauses include both a substantive provision, which protects persons from arbitrary acts by the government, *and a procedural component, which guarantees constitutionally sufficient procedures for the protection of life, liberty, and property*. See *Bonner v City of Brighton*, 495 Mich 209, 223-224; 848 NW2d 380 (2014), see also *Cary Investments, LLC v City of Mount Pleasant*, ___ Mich App ___, ___; ___NW2d___ (2022), slip op at 4-5.

> Procedural due process requires—at a minimum—that a person whose interests might be affected by government action be given notice and a meaningful opportunity to be heard before the government acts. *Bonner*, 495 Mich at 235. Additionally requirements may be necessary depending on three considerations: the private interest that will be affected, the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards. *Id*.

In this case, throughout the proceedings, the trial court gave defendant opportunity to be heard on the issue of KPR's education and the choice for his school. Moreover, it is not unusual in domestic relations matters for interim rulings to evolve factually over time, and the parties and the trial court in this matter appeared to be under the mistaken impression that hybrid learning was an option at Maplewood Baptist Academy. The trial court's decisions respecting KPR's education and school choice evolved as information changed and as the court made its final determinations regarding the children's physical custody and domicile. During this process, the court afforded defendant a full opportunity to participate in the proceedings and be heard on her position. Therefore, we reject defendant's argument that her procedural due-process rights were violated.

## D. MENTAL HEALTH RECORDS

Defendant next argues that the trial court erred by holding an *in camera* review of plaintiff's medical records, which she asserts violated her procedural due-process rights. The lower court record indicates that plaintiff's medical records from the Department of Veterans Affairs were filed with the trial court on November 4, 2021. After reviewing the records, the court

prepared a confidential memorandum, dated November 9, 2021, that addressed plaintiff's mental health issues and how they impacted his parenting.

On appeal, defendant generally argues that the court violated her right to procedural due process, but she does not adequately explain how. In *Pinebrook Warren, LLC*, ___ Mich App at ___; slip op at 24, this Court recognized that procedural due process requires "that a person whose interests might be affected by government action be given notice and a meaningful opportunity to be heard before the government acts." (Citation omitted.) Because defendant does not advance a meaningful argument, supported by relevant facts, she has effectively abandoned this argument on appeal, and therefore, we decline to address it. *In re Conservatorship of Murray*, 336 Mich App 234, 260-261; 970 NW2d 372 (2021).

## E. FINDING OF CONTEMPT

Defendant argues that the trial court erred by finding her in contempt, which she contends contributed to the trial court erroneously denying her motions for a change of domicile and a modification of custody. We agree that the trial court erred by finding defendant in contempt, but disagree that this finding affected the court's decisions on the motions for a change of domicile or modification of custody.

Defendant essentially argues that the trial court held her liable for anticipatory contempt, which occurs when a party indicates its intention not to comply with an order of the trial court in the future. *In re Dougherty*, 429 Mich 81, 106-107; 413 NW2d 392 (1987). That, however, is not what transpired in this case. The record is clear that the children were moved more than 100 miles away from their home in Marquette County when defendant moved them to Kincheloe without obtaining plaintiff's consent or permission from the trial court. In its ruling holding defendant in contempt, however, the trial court did not state if it found defendant in criminal or civil contempt. To the extent that defendant's conduct of moving the children more than 100 miles away from their legal residence without plaintiff's consent or an order of the court violated the divorce judgment, such conduct would lend itself to a finding of criminal contempt. *Id.* at 85. Moreover, the conduct occurred outside the presence of the court and the requirements of MCR 3.606 were not followed before the court made its finding of contempt. Under the circumstances, the trial court's contempt finding cannot stand. Accordingly, we vacate the finding of contempt. Contrary to what defendant asserts, however, the record discloses that the trial court did not consider or factor its contempt finding in its analysis of defendant's motion for a change of domicile or the cross-motions for a change of custody. Therefore, any error related to the trial court's finding of contempt was harmless, MCR 2.613(A), and does not warrant appellate relief respecting the court's decisions denying the motions for change of domicile or change of custody.

Affirmed in part and vacated in part. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford